In our brief, we raised three separate issues. I intend to address only two of them today. The third issue, which I will not address unless the Court, of course, has any questions concerns the increase in statutory maximum from two years to 10 years as a result of Mr. De La Cruz's conviction for second-degree assault. That issue, I think we noted, was included for preservation purposes at the Supreme Court, so I won't address that. The two that I will address are the inclusion of a term of supervised release that the District And the first issue, which I'll turn to presently, is the District Court's failure to grant Mr. De La Cruz-Valles' motion to dismiss the indictment. The parties went through motion practice. It was premised on two violations, two defects in the deportation process in immigration court. One of them concerned waiver of the right to counsel and notification of the right to counsel. The other one concerned Mr. De La Cruz-Valles' eligibility and application for relief in the form of voluntary departure. With respect to the right to counsel, the first point I want to make is that the government has the burden of proving the validity of the waiver. I think it's an important point here that could be determinative in a way that's not always present in every case. I want to start with some legal principles and then circle back to the colloquy that the immigration judge engaged in with Mr. De La Cruz-Valles. First, the advice of rights in terms of notification of the right to counsel, this court has said it needs to be meaningful. In addition, the right to seek relief, again, it needs to be meaningful. To explore a little bit the purpose and function of that, it's so that the respondent actually knows and understands the rights that he or she might be giving up or waiving. It's not just so that the immigration judge can say the magic words and tick off a box on a form that shows that they said it. There's a purpose and a function behind it. The immigration judge is supposed to inquire specifically that the respondent understands the right to counsel and to extract a knowing, voluntary, and affirmative waiver. And again, these procedures exist so we can be left reviewing the record with a firm and the respondent really understood what he or she was giving up. In addition, with respect to voluntary departure, the immigration judge has the duty or the responsibility to help a pro se litigant, as Mr. De La Cruz-Valles was, to develop the record and to advise him of any non-apparent issues or avenues of relief. Well, if he wasn't entitled to voluntary departure anyway, what difference does it make that he didn't have counsel? Well, I'm not sure I can fully agree with the conclusion that he wasn't eligible for voluntary departure. Was he categorically entitled to departure voluntarily? He did not have an aggravated felony on his record, which did make him categorically eligible for pre-hearing voluntary departure. There of course was an issue as to post-hearing voluntary departure because of Mr. De La Cruz-Valles's conviction for a crime involving moral turpitude. And the immigration judge seemed to assume that because of that conviction involving moral turpitude, that that categorically meant that Mr. De La Cruz-Valles could not make a showing that he was someone of good moral character. That's one of the prongs or one of the requirements that they need to show to be eligible for post-hearing voluntary departure. But out of... What do you think are the facts that would give him the most plausible claim to be eligible for voluntary departure? I think that in spite of the conviction, which is undeniably serious, we can't run away from that, but prior to the deportation, it was his only criminal conviction in the United States. He came to this country shortly before that. Does somebody have a telephone on? It's from outside. It's hard to hear. Yeah. Go ahead. You have to speak up a little louder. So he has a conviction, but what are his positive factors? He worked supporting the local economy for some time. He worked in landscaping. He worked in field work. He worked in a restaurant. I don't think our economy can function without those sorts of jobs being filled by people like Mr. De La Cruz-Valles. He had that limited criminal history, and he did have family ties here in the United States. He stayed with a cousin and the cousin's spouse. They had a United States citizen child. His immediate family... The cousin had a child. He didn't. Correct. Correct. Okay. His immediate family, it's true, was in Mexico, but he did have some family ties here. So I think a trained lawyer would have been able to identify at least some aspects of Mr. De La Cruz-Valles' background that counsel a grant of voluntary departure. I'm not saying, and I don't believe in good faith, I can say that he would have necessarily been granted it. How long had he been here before? Approximately one year. He came in 2012 for the first time. It's kind of ironic because you then argue with respect to supervised release that all elements really point to him going back to Mexico and not being retained here for supervised release. So there's a little bit of a contradiction in the arguments. I think that's true, Your Honor, and that is an issue that I wish to raise with respect to supervised release. Perhaps that's a good opportunity to turn to that issue unless the court had other questions about the deportation process. With respect to supervised release, my argument is not that the district court lacks discretion to deviate from the guidelines recommendation. We would never make that argument because, for the most part, that's something that tends to benefit defendants rather than harm them. My issue is more that the imposition of supervised release was rendered procedurally unreasonable because of the district court's explanation of why it imposed it. And in our view, the district court identified what are really commonplace, mundane factors that are circumstances that apply to the lion's share of illegal reentry defendants. The district court said that he came back after he was deported. Of course, that's a prerequisite for the offense. No illegal reentry defendant is charged without that being present in the first place. The district court also said that he was arrested again after he came back. And that, in my experience in any event, is true in almost every case. That's how someone comes to the attention of immigration authorities in the first place. There was really nothing specific or particularized as to Mr. de la Cruz Valles that in our view warranted or justified the conclusion that the term of supervised release was needed to deter, putting it more in guidelines language. There's nothing about this case that really takes it out of the heartland of cases that Chapter 5D1.C was meant to address. And I do find it ironic that, you know, defendants all the time complain about or try to convince a district judge or a sentencing judge to not follow the guidelines because they lack empirical support as to drug sentences, fraud, child pornography, and so forth. But this is a case where apparently the recommendation in Chapter 5 on supervised release for deportable aliens did have empirical support. The commission studied this. It released a lengthy report in July 2010. And then the amendment was passed, it's Amendment 756, to include the recommendation that deportable aliens not be given supervised release. The district court's conception that it imposed some kind of deterrent effect is hard to square with the facts. It's hard for me to imagine that a defendant would not be deterred by the prospect of facing a new prosecution and up to 10 years imprisonment in this case or 20 in other cases where an aggravated felony is present, but that including supervised release would actually deter them. And lastly, I see my time is just about up. Additional deterrent, I thought was the rationale. I think that was the rationale. I just disagree with it. And if I could just be afforded one last comment, I see that my time is up. Thank you. To address your comment about the inconsistency, I think it is an inconsistency because the district court's view that Mr. de la Cruz Valles lacked positive equities on his behalf in terms of voluntary departure at the deportation phase can't really be squared with his comments that Mr. de la Cruz Valles had a strong incentive to return to the United States and that was why he was imposing supervised release. All his immediate family was in Mexico. He had a place to live there. He was going to be able to work with his family on their farm there. And he also lacked a lengthy history of deportations and reentries that we frequently see in these kinds of cases. My time's up. Your time is up, but I have one other question. Certainly. And I'll ask the U.S. Attorney as well. Given they generally are not to impose supervised release for individuals in this situation unless there's something particularized, do you have examples of cases where there have been particularized reasons given by the district judge that didn't circle around to the fact that the person was an alien who came here illegally? I don't, Your Honor, and I cited a couple of cases in our reply brief that dealt with reverse, sort of the converse of the issue, reversing the imposition of supervised release. And coming over, I was trying to think of what those circumstances might be that would justify it, and frankly, I was having a hard time coming up with what those might be, but in any event, I would argue that they're not present here. Thank you. Thank you, Your Honors. Good morning, and may it please the court. My name is Allison Greggwire, and I represent the United States in this matter. Turning, defendant has asserted several assignments of error. I'm going to attempt to move briefly through all of them. Starting with his initial deportation hearing, where defendant attacks his 1326 conviction by collaterally attacking that deportation hearing. It's the government's position, both that defendant knowingly and intelligently waived his right to counsel, and that he was evaluated for voluntary departure, and that the immigration judge acted well within the scope of her discretion in denying him voluntary departure. Turning first to his right to seek counsel during his deportation hearing, the immigration judge in this case initially went through the right to counsel with the group. This was a group deportation hearing, and then she took up issues with defendant individually. When she went over the issues with the group, with the rights with the group, she talked a lot about having the right to an attorney or a qualified representative at no expense to the United States government. And of note, when she was talking about that representative, the immigration judge, and I'm referring to excerpt of record 95, she kept talking about help. She said, you were given a sheet containing organizations that may be able to help you for little or no cost. The group on the sheet is called Northwest Immigrant Rights Projects. They hold the legal orientation programs and workshops where they help people. And then she talks about how continuances can be granted in order to get that help, and at that point, she also discusses some other rights to include talking about the rights to present evidence that I'll come back to. But then when she takes the matters up with defendant individually, she says, good morning, did you understand those rights that the court explained to you? And he says, yes. Any questions, sir? No. Did you want more time to see if you could get help with your case? No, or excuse me, I don't think so. Then the court will find you are waiving your right to an attorney and electing to represent yourself. And of note, defendant did not interrupt at this point and say, no, I want an attorney. Defendant was well acquainted with what an attorney could do having just been in criminal proceedings for an assault to and relatively short order prior to this. But that is not what happened. And I would also invite the court to listen to the actual deportation proceeding. The recording was provided by the government, and this court accepted that recording. Because I would note in the district court's opinion in this case, he noted, and I'm at excerpt of record 32, that upon hearing the actual recording, that when it was defendant's turn to be asked about getting legal help, he stated without hesitation or a tone of confusion, I don't think so. Your Honors, this is a knowing and voluntary waiver. And I'm cognizant of the amount of issues to get through, but I would just briefly note that the cases that are cited by defendant are not even closely comparable to this case. All those cases involved cases where waiver was presumed by an alien silence. Even in the case where the rights to counsel were explained, Amada Aguilar, the judge did not articulate on the record which aliens had elected to waive those rights and which had elected to pursue the issue of counsel. So this court was left in a position of not knowing who, if anyone, had sought to assert those rights. And the other cases fall in that same vein. Additionally, the cases that defendant cites point to prejudice. They talk about the alien being confused, the alien trying to assert some form of relief, the alien having avenues of relief available to him. And that is not the case here. And that goes to the first issue. The only avenue of relief that would have been available to defendant was voluntary departure. And as it pertains to voluntary departure, he was evaluated for that relief. He had no positive equities that would vote in favor of affording that relief. And the immigration judge went forward then to deny that relief. Is the standard for prejudice that he would have to show what? He's argued that if he had a lawyer, the lawyer would have made a good argument that he, for voluntary departure. Is that good enough or? Your Honor, the standard is that defendant must show that it was plausible that he could have been afforded this relief, not merely conceivable. And that's a distinction drawn in the case law in the cases of Gonzalez-Flores and Ars Hernandez. And, Your Honor, I would submit to the court that defendant at this point has had multiple good lawyers. He was represented by the federal defenders in the district court, and then he has a different federal defender on appeal. And they are unable to come up with positive equities that would favor him being afforded voluntary departure. Defendant had an incredibly serious conviction, and he notes his lack of criminal history. Defendant was only in the United States at best for a year, and he walks away with this conviction. Why shouldn't he just get on a plane and go home? And why do we need the supervised release? Thank you, Your Honor. In terms of the supervised release, it's the government's position ultimately, and I do want to circle back, but ultimately the defendant was given what he asked for. When defendant spoke to the court, he asked, and this is record at 67, excerpts of record. He says that he promises he will not return to this country, and he just wants to get the least amount of time possible. And the reason why that's relevant is because the district court judge earlier had talked about supervised release, and that some of the benefits of supervised release are that it is an additional means of deterrence, and that it would encourage someone in defendant's position not to return to the United States. But he also talks about how if defendant, who's promising to stay in Mexico, noting that all of his family are in Mexico, his job is in Mexico, he will stay in Mexico. If he doesn't make good on that promise, then if he has supervised release, the United States doesn't have to go through an indictment and a full jury trial in order to pursue this defendant again, that he instead could just be found to be in violation of his supervised release. So the government argues, in addition to the deterrence impact, which the government thinks is certainly reason enough to impose supervised release, in this case, the court was fashioning a sentence that was what defendant was asking for, the least... I'm really having trouble with that. Well, defendant said... He didn't say, keep me in the United... If you're going to sentence me, which the court does, he didn't say, oh, and then keep me in the United States. Oh, no, Your Honor, I'm saying in terms... What did he ask for that the judge gave him? He asked to be released in the least amount of time possible, and he promised, and this is all one sentence, he promised that he would not return to this country. Okay. And the reason why that's... So now let's keep him here, that way you assure he can't return. I mean, the whole thing just seems a little bit of an Alice in Wonderland. Yeah, if you keep him here on supervised release and he promises not to return, but you basically said, no, you're going to stay here for a while longer. Is that the effect of this? I didn't understand. No, Your Honor. When a deportable alien is placed on supervised release, that supervised release runs while they are outside of the country, and it would only be triggered upon reentry into the country. Yes. And so I think the district court judge's point was, you're promising me you won't return, and so I'm going to give you a shorter sentence, which he did. He departed downward from the guideline range. But if you return to this country, the government doesn't have to go to the hassle of having you indicted and prosecuting you for another 1326. You will be found to be in violation of your supervised release. Why then do the guidelines say that generally you wouldn't impose a term of supervised release on deportable aliens? It's true in the case of every deportable alien that they might come back, at least statistically. So if the guidelines say you generally shouldn't impose it, what's the purpose then in imposing it since he falls essentially in the same category of every other deportable alien? Well, Your Honor, I think that the purpose is that it's not the supervised release doesn't carry with it a lot of the other pieces that supervised release in the United States would in terms of the ongoing proactive support of a probation officer, and I understand that. The government understands that. So basically, as I hear you, you're saying, well, this is really for the government's administrative convenience. No, noting that is an additional reason. I think that the primary impetus behind imposing the supervised release was for a deterrent effect. And I would note, Your Honor, the provision that is being referred to is in Section 5D1.1 of the guidelines. And the reason why I indicate that is because this is not in the 1326 guideline. This is in the general guidelines. So in other words, if an illegal alien is convicted of bank fraud, or an illegal alien is convicted of a gun offense or comparable, this might make more sense to have someone who is going to be removed from the country anyway not be subject to a term of supervised release. This defendant, however, had already been removed and illegally returned to the country. That would not be the case for every defendant. Do you have examples of other cases where, in a 1326 situation, the undocumented alien was given supervised release for the deterrence or some other reason? No, Your Honor, that's the short answer, is no. I would just note that Note 5 specifically talks with respect to supervised release in these situations. The supervised release not just may be, but I believe it says ought to be. Just one moment, I apologize. The court should, however, it actually says should, not ought, should, however, consider imposing a term of supervised release on such a defendant, referring to an alien defendant, if the court determines it would provide an added measure of deterrence and protection. And the court said that that's why the court was doing the additional deterrence, because he had come back, he reentered twice within a fairly short period. Yes, Your Honor, within a year, and both times, as the court aptly stated, have been found in the clutches of law enforcement. Thank you. Thank you. You have a minute for rebuttal if you need it. Thank you, Your Honors. Just two brief points. The first is that Ms. Gregoire indicated that the immigration judge's discussion of getting help with your lawyer, getting help with your case in the context of a right to counsel, would have meant to Mr. de la Cruz Valles the same thing when the immigration judge asked him individually, do you want more time to try to get help with your case? And that's a connection that a trained, highly capable lawyer is making. I'm not sure it's the connection that my client would have been making in his mind with limited English skills and a ninth grade education. And it's basically the same argument when Ms. Gregoire says that the district court gave Mr. de la Cruz Valles the sentence that he asked for, because he asked for less time. He asked for less time imprisonment. I don't think it was going through his mind at the time that he could get less time by agreeing to a term of supervised release that wouldn't have otherwise been applicable. Thank you. Thank you both for your argument, counsel. The case of United States v. de la Cruz Valles is submitted.
judges: Goodwin, Schroeder, McKeown